UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| LEEBCOR SERVICES, LLC, | ) |
| Plaintiff, | ) |
| v. | )  Case No. _____ |
| THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff, Leebcor Services, LLC ("**Leebcor**") by counsel, hereby states as follows for its Complaint against Defendant, The Hartford Accident and Indemnity Company ("**Hartford**"):

## Introduction

1.   Leebcor brings this Complaint to recover for the significant damages caused by McKenney's, Inc. ("McKenney's") deficient and untimely work on the Project, resulting in its default under its subcontract agreement, as such damages are due and owing from Hartford under McKenney's performance bond, Bond No. 20BCSHR1025 (the "**Bond**"). A copy of the Bond is attached as **Exhibit A**.

## Parties

2.   Leebcor is a Virginia limited liability company with its principal place of business in Williamsburg, Virginia.

3.   Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

**Jurisdiction and Venue**

4. This Court has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332, as this action is between two diverse parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over Hartford pursuant to Virginia law (Va. Code § 8.01-328.1).

6. Venue is proper in the Newport News Division of the United States District Court for the Eastern District of Virginia (Va. Code § 8.01-262).

**Factual Background**

7. In 2016, the United States Army Corp of Engineers ("**USACE**" or the "**Government**") awarded Leebcor the prime contract number W91278-16-D-0033 (the "**Prime Contract**") to renovate and upgrade an existing troop barracks located on Fort Benning, Georgia, known as Building 3105, Starship Barracks (the "**Project**").

8. The approximately 200,000 square foot building contained numerous areas – company operations rooms, sleeping areas, laundry rooms, support areas, classrooms, and covered training areas – and required a complete overhaul.

9. The prime contract price for Leebcor was $36.8 million and the federal government allocated 435 calendar days for the construction phase, which was an aggressive, but manageable timeline.

10. Pursuant to its role as the prime contractor on the Project, Leebcor accepted bids for various subcontract work.

11. McKenney's submitted a bid for the plumbing, heating, ventilation, and air conditioning services for the Project.

12. Leebcor required an experienced mechanical subcontractor to oversee and manage the plumbing and HVAC work.

13. McKenney's advertised itself, falsely, as having successfully completed several of these types of projects at Fort Benning, leading Leebcor to place its trust in McKenney's ability to do the job. Indeed, McKenney's represented to Leebcor that it had firsthand experience with the precise Project work.

14. After pre-contract negotiations, Leebcor and McKenney's entered into a Subcontract Agreement on January 10, 2017 in the amount of $10,163,970.00. A copy of the Subcontract is attached as **Exhibit B**.

15. The Subcontract contains numerous important provisions including, but not limited to the following:

> **2.    PRIME CONTRACT/SPECIAL PROVISIONS**
> Work performed under this Agreement will be in furtherance of work undertaken by Buyer under a prime contract ("Prime Contract") between Buyer and US Army Corps of Engineers ("Buyer's Client"). As such, Seller shall be bound to terms and conditions contained in the Prime Contract to the same extent as Buyer is bound to Buyer's Client under the Prime Contract. A copy of such terms and conditions ("Prime Contract Flow down Provisions") pertinent to Seller's responsibilities are hereby included in **Exhibit 5** attached.

**Exhibit B**, at 1 (Section 2 of the Subcontract).

> **5.    INVOICES AND PAYMENT TERMS**
> […] Seller agrees that payments owed by Buyer for performance hereunder may be offset by amounts equal to what Seller owes Buyer under this Agreement.

*Id.* at 2 (Section 5 of the Subcontract).

> **8.    WARRANTY AND DEFECTIVE WORK CURE**
> All Work shall be performed in a competent manner and shall reflect Seller's best professional knowledge, judgment and accepted industry practice. All Work shall

3

> at all times be subject to Buyer's review and inspection; but neither Buyer's review and inspection nor failure to review or inspect shall relieve Seller of any obligation hereunder. […] If Buyer's and Engineer <u>reasonably determine</u> the Work fails to conform to specifications or is otherwise defective, upon <u>written</u> notice to Seller, Seller shall promptly replace, correct or re-perform same Work promptly and at Seller's expense. In the event that Buyer must re-perform or procure Work that has been <u>reasonably determined</u> by Buyer as <u>not in compliance with this Agreement</u>, Seller shall incur all expenses of such re-performance or procurement.

*Id.* at 3 (Section 8 of the Subcontract).

> **12. DEFAULT**
> Time is of the essence in the performance by Seller of the Work. […] ***Seller shall be liable to Buyer for all costs*** incurred by Buyer in completing or procuring the completion of performance of the Work in excess of the price of the Agreement (whether or not Buyer exercises its option hereunder).

*Id.* at 4-5 (Section 12 of the Subcontract) (emphasis added).

> **28. LIQUIDATED DAMAGES**
> [L]iquidated damages for this contract are **Two Thousand and Nine Dollars and 85/100 Center ($2,009.85)** for each calendar day the project is not completed on time. If buyer is delayed because of the Seller, than the Buyer will assess Liquidated Damages to the Seller <u>to the extent such damages are caused by fault of the Seller</u>.

*Id.* at 8 (Section 28 of the Subcontract).

> Subcontractor shall agree to fully participate in the LEEBCOR SERVICES LLC Quality Control Plan and all the daily requirements for reporting of work performed, crew sizes, hours expended. Subcontractor shall designate a responsible Quality Control Representative who has the authority to act for the company in regard to quality issues, testing, inspection, and report to the LEEBCOR SERVICES LLC Quality Control Manager on a daily basis the measures required by Quality Control Specification. The Subcontractor agrees to provide access to his work for purposes of inspection. The LEEBCOR SERVICES LLC has emphasized that any variation whatsoever from the Contract Documents for the submittal being made to the A/E shall be clearly indicated and flagged.

*Id.* at 12 (Exhibit 1 to the Subcontract, Paragraph C.5).

16. The liquidated damages provision of the Subcontract acts as a flow-down provision for liquidated damages that are assessed against Leebcor by USACE. The daily liquidated damages

4

amount ($2,009.85) in the Subcontract is identical to the liquidated damages amount in Leebcor's Prime Contract with USACE.

17. The Subcontract required McKenney's to obtain performance and payment bonds prior to comment of work. (Subcontract, Paragraph 13.)

18. Prior to commencement of work, McKenney's obtained the Bond and subsequently notified Leebcor of its retention.

### The Project Schedule and McKenney's Delays

19. Leebcor received the Notice to Proceed ("NTP") for the design phase of the Project on November 15, 2016 and the contract time for design and construction was specified as five hundred and forty (540) calendar days, making the required contract completion date to be August 26, 2018.

20. From the outset of the Project, McKenney's was resistant and uncooperative with the schedule timeframe set by the USACE to which it had agreed as part of the Subcontract.

21. Even though McKenney's participated in the pre-construction scheduling conference on January 31, 2017, and agreed to the original schedule methodology in that same meeting, McKenney's subsequently challenged the schedule and its plans to move forward on two barracks simultaneously, *after* they failed to perform.

22. In fact, McKenney's response to the Project schedule was a reflection of McKenney's awareness that it and its tiered subcontractors would not be able to keep pace with the schedule – concerns that would become reality as the Project progressed.

23. Before the Project was able to get off the ground, the Government delayed the Project by six (6) months in 2017 due to delays on a separate Fort Benning barracks project that would have housed Military personnel relocated from Starship 3105. That other barracks project

was delayed and, as a result, Leebcor was forced to wait to proceed with the demolition. Unsurprisingly, McKenney's was a subcontractor on the other barracks project.

24. This delay by the Government caused Leebcor to issue a revised Published Project Schedule that moved the Project start date from March 14, 2017 to approximately August 21, 2017 and a projected finish date of December 17, 2018.

25. Eventually the Project began and encountered significant delays as a result of McKenney's deficient and untimely work.

26. McKenney's work was deficient in several areas, including (i) McKenney's failure to timely begin and complete the installation of the HVAC equipment for the roof; (ii) McKenney's failure to timely begin and complete the installation of the ductwork; (iii) McKenney's failure to timely begin and complete the insulation of the ductwork; (iv) failure to properly protect the ventilation system components during construction; (v) failure to properly seal the ductwork and associated components; (vi) failure to properly install plumbing hangers in the barracks bathrooms; (vii) failure to comply with the Government and Leebcor's quality control standards, as required by the Government's contract; (viii) failure to pass contractually-required leakage tests; (ix) failure to properly oversee and manage its tiered subcontractors; and (x) failure to timely remedy its deficient work upon request. These deficiencies constituted breaches of the Subcontract and default under the Subcontract.

27. McKenney's deficient and untimely work resulted in significant delays on the Project, including (i) delays caused by McKenney's failure to properly protect all ventilation system components during construction; (ii) delays caused by McKenney's failure to oversee and manage its tiered subcontractors; (iii) delays caused by McKenney's untimely installation of the HVAC ductwork and insulation; (iv) delays in the testing and balancing of the HVAC system; and

(v) delays in the final testing requirements related to vent smoke tests, are just a few examples of the numerous delays caused by McKenney's untimely work.

28. As a result of McKenney's deficient and contractually non-compliant work, Leebcor was forced to incur additional expenses, including Subcontractor damages of: (i) $76,000.00 to retain a new subcontractor to correct McKenney's defective sheetrock work in the 20 large bathrooms and 16 smaller bathrooms; and (ii) $35,000.00 in change order work from Addison Energy Technologies as a result of the delays caused by McKenney's deficient HVAC installation, delaying TAB execution.

29. As a result of McKenney's deficient, delayed and untimely work, at least one hundred and ninety-four (194) calendar days of delay were added to the Project as a direct result of McKenney's.  That delay directly resulted in significant damages to Leebcor totaling $1,550,380.10, due to Leebcor's extended general conditions costs and home office overhead losses.

30. The Project concluded on April 27, 2019. A copy of the May 30, 2019 NAVCA/USACE Past Performance Questionnaire identifying the project completion date, completed by Ms. Amy Vaughn, Resident Engineer, USACE Savannah District, is attached as **Exhibit C**.

31. In total, McKenney's untimely and deficient work caused at least 194 calendar days of delay to the Project and resulted in damages to Leebcor, including general conditions damage, home office overhead loss, and subcontractor back charges/damages, in the total amount of $1,661,380.10.

32. On March 2, 2021, Leebcor submitted a claim and made demand on Hartford under the Bond for all costs/expenses incurred by Leebcor on the Project due to the actions and inactions

of McKenney's in breach of the Subcontract, constituting default by McKenney's of its Subcontract obligations.

33. On March 29, 2021, Hartford indicated it would not make a determination as to Leebcor's bond claim until such time as Leebcor's pending litigation with McKenney's, referenced below, resolved.

34. McKenney's breaches/material breaches under the Subcontract put it in default under the Subcontract.

35. Hartford is obligated under the Bond to pay the full amount of Leebcor's damages alleged against McKenney's in litigation pending in this Court styled *United States for the Use and Benefit of McKenney's, Inc. v. Leebcor Services, LLC et al.*, Case No. 4:20-cv-179.

## Count I: Breach of Contract/Performance Bond

36. Leebcor incorporates the preceding paragraphs as if stated herein.

37. McKenney's owed duties to Leebcor pursuant to the Subcontract to provide timely, proper, and complete work in accordance with the Subcontract.

38. McKenney's failed and defaulted in its obligations to Leebcor when its work was deficient and untimely, in breach/material breach of its Subcontract obligations.

39. Leebcor suffered damages as a result of McKenney's breaches/material breaches of its Subcontract, which constitute default under the Subcontract, including its untimely and deficient work, in the amount of $1,661,380.10.

40. Hartford, as surety on the Bond, is jointly and severally liable with McKenney's to pay Leebcor for all costs/expenses incurred by Leebcor on the Project due to the actions and inactions of McKenney's in breach/material breach of the Subcontract.

41. Hartford has failed to make payment in response to Leebcor's claim on the Bond.

42. Hartford's failure to make payments to Leebcor on its claim constitutes breach of the Bond.

43. Leebcor has performed all conditions precedent to recovery on the Bond.

WHEREFORE, Plaintiff, Leebcor Services, LLC respectfully requests that this Court enter judgment in favor of Leebcor Services, LLC and against Defendant, The Hartford Financial Services Group, Inc., award Leebcor Services, LLC damages in the amount of $1,661,380.10, plus costs, and interest from the date of judgment, and grant such other and further relief as the Court deems necessary under the circumstances.

Dated: April 16, 2021                                    LEEBCOR SERVICES, LLC

/s/ *Thomas A. Coulter*
Thomas A. Coulter (VSB No. 46532)
Patrick D. Houston (VSB No. 92298)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, Virginia  23219
Telephone: (804) 593-1362
Facsimile: (804) 593-1363
E-mail: tcoulter@wtplaw.com
E-mail: phouston@wtplaw.com

*Counsel for Plaintiff, Leebcor Services, LLC*